UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAWRENCE JOHNSON,

                    Petitioner,              **DECISION AND ORDER**
                                             No. 00-CV-6106T

        -vs-

CHRIS ARTUZ, Superintendent Green Haven
Correctional Facility,

                    Respondent.
_____

## INTRODUCTION

Petitioner, Lawrence Johnson ("Johnson"), initially filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the Court on November 17, 1999. *See* Docket #1. Respondent answered the petition on October 7, 2000. The Court denied Johnson's request for habeas relief in a decision and order entered August 12, 2003. *See* Docket #26. The Court held that Johnson's claims that the prosecutor failed to disclose exculpatory evidence and that his sentence was based on inaccuracies contained in the pre-sentence report were unexhausted but procedurally defaulted because Johnson had no avenues for review available in state court. As to Johnson's claim that he was improperly denied the right to testify before the grand jury, the Court found that it was not cognizable in a federal habeas corpus proceeding. The Court examined the merits of Johnson's remaining claims, namely, that he was denied due process because he was not afforded a formal mental health examination pursuant to New York Criminal Procedure Law 730.30; that he was denied due process based on the trial court's

dismissal of a sworn juror for cause upon the prosecutor's request; that his cross-examination of a witness was improperly curtailed; and that he was denied the effective assistance of counsel. None of these claims were found sufficient to warrant habeas relief.

Shortly thereafter, Johnson retained Donald Thompson, Esq. to assist him in connection with the instant matter. The Court stayed the petition until September 22, 2003, to permit counsel to file additional pleadings for the purpose of augmenting the record. Counsel filed two supplemental affirmations and memoranda of law (Docket ##30, 33) in which he essentially reargues the claims raised in the initial habeas petition which, although previously addressed in the Court's August 12, 2003 decision, will be again addressed here. He also raises a new claim that Johnson's adjudication and sentence as a persistent felony offender violates the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. Respondent has submitted two memoranda of law in opposition to Johnson's pleadings. The matter is now fully briefed and ready for decision. For the reasons set forth below, the petition is denied.

## DISCUSSION

### Standard of Review

In order to determine whether a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub.L. No 104-132, 110 Stat. 1214. AEDPA, provides, in relevant part, that

> (d) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554(d)(1), (2). "[C]learly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions[.]'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., for the court)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The "unreasonable application" prong comes into play where the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Simply because a federal habeas court "'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly'" does not provide a basis

for granting the writ. *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411)). Rather, the state court's application must also be "unreasonable." The Second Circuit has added the caveat that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (in turn quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir.1999)).

**Merits of the Petition**

**1.    Ineffective assistance of trial counsel**

    **a.    Legal standard**

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." *Id.* Second, a petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 694. To establish the "prejudice" prong of the *Strickland* test, a petitioner must show that a "reasonable probability" exists that,

but for counsel's error, the outcome of the trial would have been different. *Id.* at 694.   The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### b.   Alleged grounds of ineffectiveness

#### i.   Failure to request competency hearing

Johnson contends that trial counsel, "instead of obtaining the services of a psychiatrist or psychologist or making a formal motion for a court-ordered examination, . . . relied, and allowed the lower court to rely upon the informal report of a nurse practitioner of unknown training or qualifications employed by a court-affiliated agency." Petitioner's First Affirmation and Memorandum of Law in Support of Writ of Habeas Corpus ("Pet'r Mem. 1") at 4 (Docket #30). Apparently, this nurse practitioner opined in her report that, based on an interview with Johnson conducted by her and a physician, Johnson was competent to proceed. *Id.* Johnson points to New York Criminal Procedure Law ("C.P.L.") 730.30, which "outlines in detail a rigorous procedure for determining competence" and argues that the "informal procedure acceded to by trial counsel and sanctioned by the lower court failed to supply any of the statutory protections[.]" Pet'r Mem. 1 at 5 (Docket #30). Thus, Johnson is alleging that trial counsel erred in failing

-5-

to ensure that the statutory strictures of C.P.L. 730.30 were
followed.

As an initial matter, the Court notes that an error of state
or federal law can form the basis for a Sixth Amendment claim of
ineffective assistance of counsel. *Claudio v. Scully*, 982 F.2d
798, 805 (2d Cir. 1992) (citing *Strickland*, 466 U.S. at 690)). The
Court must determine whether it was objectively unreasonable for
counsel not to request a formal competency hearing, and whether
Johnson suffered constitutional prejudice as a result of that
omission. Under the facts presented here, the Court concludes that
Johnson cannot satisfy either prong of the *Strickland* standard.

The Supreme Court has held that "the criminal trial of an
incompetent defendant violates due process." *Cooper v. Oklahoma*,
517 U.S. 348, 354 (1996) (citing cases); *accord Drope v. Missouri*,
420 U.S. 162, 171-73 (1975); *Pate v. Robinson*, 383 U.S. 375, 378
(1966); *Harris v. Kuhlmann*, 346 F.3d 330, 349 (2d Cir. 2003). New
York's criminal procedure law directs that the "court wherein the
criminal action is pending must issue an order of examination when
it is of the opinion that the defendant may be an incapacitated
person." N.Y. Crim. Proc. Law 730.30. Then, under certain
circumstances (*e.g.*, if the psychiatric reports conclude that the
defendant is incapacitated, if the psychiatric reports are not
unanimous, or if either the court or the attorneys are not
satisfied with a finding that the defendant is competent to stand
trial), the trial court may order a hearing. *Id.* Although the

-6-

procedure used to determine competency in New York is somewhat different from the procedure followed in the federal court system (which does not require a psychiatric examination prior to a hearing, *see* 18 U.S.C. § 4241; *Medina v. McGinnis*, 2004 WL 2088578, at *11 & n. 28 (S.D.N.Y. Sept. 20, 2004) (Report and Recommendation), adopted by, Order filed Oct. 29, 2004 (Docket # 17 in 04 Civ. 2515)), the New York procedures have been deemed to provide the same procedural protections required under Supreme Court law. *Silverstein v. Henderson*, 706 F.2d 361, 367 (2d Cir. 1983). These protections require the court to inquire into the defendant's competency only if "there is 'reasonable ground' for believing that the defendant may be incompetent to stand trial." *Silverstein*, 706 F.2d at 369 (citing *United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2d Cir. 1972)). Absent a "reasonable basis" for questioning the defendant's competency, the trial court is not obligated to hold a competency hearing. *See United States v. Nichols*, 56 F.3d 403, 414 (2d Cir.1995) ("[T]he Due Process Clause [does not] require[ ] a hearing in every instance; a hearing is required only if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent.") (citations omitted).

Turning first to the question of whether it was unreasonable for counsel not to have requested a formal, court-ordered competency examination, the Court notes that C.P.L. 730 defines an "incapacitated person" as a "defendant who as a result of mental

disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y Crim. Proc. Law 730.10. Nowhere in his supplemental pleadings submitted to this Court does Johnson provide a factual basis for classifying himself as an "incapacitated person." Thus, his new pleadings suffer from the same defects as those found in his initial pleadings filed with this Court. As this Court noted in its first order dismissing the petition, Johnson made "no showing that he was not competent to stand trial." Order at 8 (Docket #26). Furthermore, as the Court observed, the record indicates that Johnson "participated in his trial and subsequent sentencing proceeding in a meaningful and rational matter." *Id.*

In his supplemental proceedings, Johnson has offered no basis for Court to change its previous assessment. For instance, Johnson does not allege that he has been diagnosed with any kind of mental illness, that he is on any kind of psychiatric medication, or that he suffers from any signs or symptoms commonly associated with mental illness. Moreover, in the proceeding below, the only documentation apparently available to counsel was a report submitted by a nurse practitioner *and* a physician finding that Johnson *was* competent to proceed. Thus, defense counsel apparently was not provided with a factual basis for pressing the competency issue. The Sixth Amendment does not require trial counsel to make motions that have no factual or legal basis just for the sake of making motions. It is significant that New York state courts have

declined to find ineffective representation where "there is no evidence that defendant lacked the capability of understanding the proceedings against him or assisting in his own defense[.]" *People v. Mettler*, 147 A.D.2d 849, 538 N.Y.S.2d 74 (App. Div. 3d Dept. 1989); *see also People v. Garcia*, 161 A.D.2d 796, 556 N.Y.S.2d (App. Div. 2d Dept. 1990).

Furthermore, in his supplemental argument regarding this issue, Johnson has failed to address *Strickland*'s prejudice inquiry. The Supreme Court clearly has held that deficient performance is not enough on which to bottom a claim of ineffective assistance of counsel–a petitioner also must affirmatively prove prejudice. Here, as noted above, Johnson has not provided any basis for believing that he, in fact, was not capable of participating in his own defense. Thus, there is no basis for finding that there was a reasonable probability that had a formal competency examination been ordered, the outcome of the trial would have been different. Habeas relief therefore cannot issue on this claim.

### ii. **Failure to allow petitioner to testify before the grand jury**

Johnson also contends that trial counsel was ineffective in failing to secure an opportunity for Johnson to testify before the grand jury. New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel. *See*, *e.g.*, *People v. Wiggins*, 89 N.Y.2d 872, 675 N.E.2d 845, 653 N.Y.S.2d 91 (N.Y. 1996) ("Defense counsel's failure to timely

facilitate defendant's intention to testify before the Grand Jury does not, per se, amount to a denial of effective assistance of counsel under the circumstance of this case[.]"); *People v. Dennis*, 295 A.D.2d 755, 744 N.Y.S.2d 534 (App. Div. 3d Dept. 2002) (holding that "defense counsel's failure to notify the People that defendant wished to testify before the Grand Jury does not, by itself, amount to ineffective assistance of counsel" and finding that "defendant's conclusory allegation that this failure may have impacted [his] ability to present a viable defense to be insufficient to support an ineffective assistance of counsel claim") (alteration in original) (quotation omitted). Likewise, federal habeas courts repeatedly have declined to find that such claims warrant habeas relief, primarily because a petitioner typically cannot show that he was prejudiced by trial counsel's failure to secure his appearance before the grand jury. *See*, *e.g.*, *Bingham v. Duncan*, No. 01 Civ. 1371, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) (rejecting petitioner's claim that counsel was ineffective for failing to secure petitioner's right to testify before the grand jury and stating that "[g]iven that any defect in the grand jury proceeding was cured by petitioner's subsequent conviction, . . . it necessarily follows as a matter of law that petitioner cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation" ) (internal quotation omitted); *Hutchings v. Herbert*, 260 F. Supp.2d 571, 578 & n. 2

(W.D.N.Y. 2003) (rejecting ineffective assistance of counsel claim;
by failing to show "what he would have told the grand jury that
would have prevented his indictment," petitioner "failed to
demonstrate any prejudice from the alleged failure of his attorney
to ensure an opportunity for him to testify before the grand jury"
) (and cases cited therein); *Cates v. Senkowski*, No. 02 Civ. 5957,
2003 WL 1563777 at *3 (S.D.N.Y. Mar. 17, 2003) (rejecting
petitioner's claim that counsel was ineffective for failing to
ensure petitioner's ability to testify before the grand jury;
stating that "[e]ven if petitioner could establish that his
counsel's assistance fell below an objective standard, he
definitely has not satisfied *Strickland*''s requirement of prejudice
[since] conviction by the petit jury cures any prejudice from such
an error during the grand jury proceedings" ). Consequently, habeas
relief cannot issue on this claim.

## 2.   Improper dismissal of sworn juror

Johnson contends that the trial court erroneously discharged
a sworn juror, for cause, at the prosecutor's request and over
defense counsel's objection. The trial court's reason for
discharging Ms. Ferro, as articulated on the record, was that she
had a state of mind which precluded her from rendering an impartial
verdict. According to Johnson, this ruling was in error because the
trial court applied the standard for discharging an *unsworn*
venireperson set forth in C.P.L. 270.20(1)(b). Johnson contends
that the trial court should have applied C.P.L. 270.35, which

provides that a trial court may excuse a *sworn* juror if "at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service, or the court finds, from facts unknown at the time of selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature[.]" N.Y.Crim. Proc. Law 270.35.

In general, "[j]uror discharge and voir dire proceedings are governed by state law." *McCrary v. Artuz*, No. CV 95-622, 1995 WL 728423, at *3 (E.D.N.Y. Nov. 28, 1995) (citing N.Y.Crim. Proc. Law § 270.35 , 270.15(3)).  The Court notes that all of the cases save one upon which Johnson relies in support of this claim for habeas relief are New York state law cases. However, the text of the federal habeas statute makes clear that habeas corpus relief is not available for state law errors that do not rise to the level of federal constitutional violations. Section 2254(a) provides that

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*.

28 U.S.C. § 2254(a) (emphasis supplied). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the

-12-

Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Smith v. Phillips*, 455 U.S. 209, 211 (1982) (holding that non-constitutional claims are not cognizable in federal habeas proceedings).

Thus, it is clear that a violation of a state statute such as New York's rule governing juror discharge is not a claim cognizable on federal habeas review unless the violation implicates federal constitutional concerns. Here, Johnson has offered nothing beyond his bare allegations that the trial court applied the wrong section of the Criminal Procedure Law in determining whether to grant the prosecutor's request to challenge Ms. Ferro for cause. That is plainly insufficient to state a federal constitutional violation. *See* 28 U.S.C. § 2254(a); *McCrary v. Artuz*, 1995 WL 728423, at *3 (rejecting claim under C.P.L. 270.35 as not cognizable on federal habeas review).

Even assuming that the state court erred, no federal constitutional violation occurred as a result. To be sure, under the Sixth Amendment, Johnson has the right to be tried by an "impartial jury." The issue presented by Ms. Ferro was that she appeared to be incapable of being impartial because she was preoccupied with the possibility that her decision as to Johnson's guilt or innocence would affect his destiny. One can surmise that that is why Johnson wished Ms. Ferro to stay remain on the jury panel. As the Court pointed out in its first decision, if Ms. Ferro

had expressed similar concerns before being sworn, she most
certainly would have been dismissed for cause pursuant to C.P.L.
270.20(1)(b).

In any event, the record indicates that defense counsel was
able to select an alternate juror to replace Ms. Ferro, and Johnson
has not alleged that any of the jurors who actually sat on his jury
were incapable of being impartial. Thus, Johnson has failed to
establish that the substitution resulted in any prejudicial impact
on the outcome of his trial. *See Rivalta v. Artuz*, No. 96 CIV.
8043(SAS), 1997 WL 401819, at *5 (S.D.N.Y. July 16, 1997)
(rejecting petitioner's claims that he was deprived of his
constitutional and statutory right to trial with a jury of his
choosing by the court's discharge and subsequent replacement of a
sworn juror at the outset of his trial; petitioner failed to show
that he was prejudiced by the substitution). Habeas relief is not
warranted on this claim.

3.  **Erroneous exclusion of evidence**

Johnson contends that the trial court erroneously precluded
him from introducing certain testimony by Joseph Francis
("Francis"), a jailhouse acquaintance of his. According to the
defense offer of proof, Francis would have testified that, on the
morning of the robbery, co-defendant Frank Gavin ("Gavin")
solicited Francis to take part in the robbery for which Johnson was
convicted. According to Francis, Gavin said he was going to induce
Johnson to commit the robbery by "making him shoot the drug" (*i.e.,*

PCP or Phencyclidine). Gavin allegedly was going kill Johnson after
the robbery and split the proceeds with Francis. After hearing
extensive argument, the trial court found that Gavin's statements
did not meet the requirements of a declaration of penal interest
under the four-prong test articulated by the New York Court of
Appeals. *See People v. Settles*, 46 N.Y.2d 154, 167 (1978). The
trial court held that Gavin, was an indicted co-defendant and
therefore "unavailable," and that, as the other perpetrator, he did
have information material to the case. As such, Gavin's statement
fulfilled two prongs of the *Settles* test. However, the trial court
found, Gavin's testimony failed the "awareness" and the
"reliability" test. On direct appeal, the Appellate Division
agreed, holding that the "record establishe[d] that the declarant
was not aware at the time that the statements were made that they
were against his penal interests[.]" *People v. Johnson*, 252 A.D.2d
967, 968, 676 N.Y.S.2d 366 (citation omitted).

In *Chambers v. Mississippi*, the Supreme Court recognized that
a defendant's right to present evidence at trial is a matter of due
process: "The right of an accused in a criminal trial to due
process is, in essence, the right to a fair opportunity to defend
against the State's accusations. The rights to confront and
cross-examine witnesses and to call witnesses in one's own behalf
have long been recognized as essential to due process." 410 U.S.
284, 294 (1973). However, the right to present a defense is not
absolute; defendants in criminal cases "must comply with

established rules of procedure and evidence designed to assure both
fairness and reliability." *Id.* at 302.

As noted above, "federal habeas corpus relief does not lie for
errors of state law . . . In conducting habeas review, a federal
court is limited to deciding whether a conviction violated the
Constitution, laws or treaties of the United States." *Estelle v.
McGuire*, 502 U.S. at 67-8. *See also Pulley v. Harris*, 46 U.S. 37,
41 (1984) ("A federal court may not issue the writ on the basis of
a perceived error of state law."). An erroneous evidentiary ruling
only warrants issuance of the writ if petitioner can show that the
error deprived him of a "'*fundamentally fair* trial.'" *Rosario v.
Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (quoting *Taylor v. Curry*,
708 F.2d 886, 891 (2d Cir.), *cert denied*, 464 U.S. 1000 (1983)
(emphasis in original)).

The Court notes that trial judges are afforded considerable
discretion in assessing the reliability of hearsay statements
offered under a penal-interest exception. *See*, *e.g.*, *United States
v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003). The trial court here
did not abuse its discretion in finding that Gavin, the declarant,
was unaware that his statements were against his penal interests at
the time. First, Gavin did not admit to any crime; rather he was
discussing a planned robbery that had not yet taken place. Second,
he was talking to an individual whom allegedly he was convincing to
have participate in the criminal venture with him. There is no
indication that Gavin had any idea that, during the conversation

with Francis (a potential co-perpetrator), he was placing himself in jeopardy of criminal prosecution. *Cf. Morales v. Portuondo*, 154 F. Supp.2d 706, 721 (S.D.N.Y. 2001) (finding that defendant was aware at the time he made his statements to two witnesses that they were contrary to his penal interest; he was admitting his involvement to a murder and he was making the admissions to individuals he believed would take the information to the prosecuting authorities) (citing *Chambers v. Mississippi*, 410 U.S. at 301 ("McDonald stood to benefit nothing by disclosing his role in the shooting to any of his three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution")).

Furthermore, it was not an abuse of discretion to conclude that Gavin's statements did not bear sufficient indicia of reliability and trustworthiness to make them admissible. Francis stated that on the day that Gavin spoke to him, he had seen Gavin before but did not know him and was not friends with him. Despite this lack of a relationship, Francis averred that Gavin solicited his participation in an armed robbery and possibly a murder. On its face, such a scenario seems to lack plausibility. Moreover, there were no other independent circumstances attesting to the trustworthiness and reliability of the declarant's statements; for instance, the surveillance team apparently did not corroborate other aspects of the encounter between Francis and Gavin as described by Francis.

Even if the trial court erred in excluding the hearsay statements, which this Court expressly does not find to be the case, the exclusion did not deprive Johnson of a fundamentally fair trial. Johnson still was able to present a defense of duress, even without Gavin's statements. Indeed, Gavin's statements were not material to a defense of duress since, according to Francis, all Gavin said was that he was going to induce Johnson to take part in the robbery by providing him with drugs. The omitted testimony, evaluated in the context of the entire record, simply does not creates a "reasonable doubt that did not otherwise exist." *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000) (quoting *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996) (in turn quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976) (internal quotation marks omitted)). Accordingly, habeas relief is not warranted on this claim.

**5.    Unconstitutionality of petitioner adjudication as a persistent felony offender**

Johnson claims that he was sentenced in violation of *Apprendi v. New Jersey*, *supra*; *Ring v. Arizona*, 536 U.S. 584 (2002); *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005). He contends that his sentence as a persistent felony offender must be vacated because New York's persistent felony offender statute violates a defendant's right of confrontation, right to a trial by jury, and right to due process. Petitioner's Second Supplemental Memorandum of Law ("Pet'r Mem. 2") at 3-4 (Docket #33). Specifically, Johnson complains about New York

Penal Law 70.10(1)(a), which defines a persistent violent felony offender as a "[p]erson who stands convicted of a felony after having previously been convicted of two or more felonies." Under the statute, such a person may receive an enhanced sentence provided that the sentencing court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." N.Y. Crim. Proc. Law 70.10(2). Johnson argues that because C.P.L. 70.10(2) requires the trial judge to "make findings concerning a defendant's history and character as well as the circumstances of his offense to justify an enhanced sentence as a persistent felon," New York's Penal Law "violated his Sixth Amendment right to have the facts upon which his sentence was based found by a jury." Pet'r Mem. 2 at 10 (Docket #33).

Respondent contends that this claim is unexhausted since it does not appear the Johnson ever raised the claim in any state court proceeding. Johnson states that he "raised virtually every conceivable objection to his persistent felony sentencing procedure" but he does not specify the venues in which these objections were raised. *See* April 23, 2006 Letter of Attorney Thompson to the Court (not docketed). Based upon the review of the state-court pleadings submitted by respondent, the Court is inclined to agree with respondent that Johnson's sentencing claim is unexhausted. The next issue is whether the claim remains

unexhausted or should be deemed exhausted but procedurally defaulted because Johnson faces an absence of corrective process in state court. Because the Court finds that it is more efficient to simply dispose of Johnson's claim on the merits than to address the more complicated issues of exhaustion and procedural default, the Court will proceed to the merits of the claim.

Johnson's reliance on *Apprendi*, *Ring*, *Blakely* and *Booker* is misplaced since all of these cases were decided well after his conviction became final. The Appellate Division affirmed Johnson's conviction on July 8, 1998. The New York Court of Appeals granted to leave to appeal, but ultimately affirmed the Appellate Division's holding on November 24, 1998. Johnson's petition clearly is governed by AEDPA since he was convicted well after the statute's enactment on April 24, 1996. For purposes of AEDPA's one-year statute of limitations, Johnson's conviction became final on February 22, 1999, which was ninety (90) days after his time to seek a writ of *certiorari* from the Supreme Court expired. *See* 28 U.S.C. § 2244(d).

Under AEDPA, in order to grant habeas relief, a federal court must find that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). The Second Circuit has explained that under AEDPA's standard, the Court's task is not to decide whether the state court "correctly interpreted the doctrine

of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court *at the time*." *Brown v. Greiner*, 409 F.3d 523, 533 (2d Cir. 2005) (emphasis supplied). The Second Circuit noted, however, that the Supreme Court has provided "inconsistent guidance" regarding the "precise time" to which a habeas court should look when assessing what was "clearly established Federal law, as determined by the Supreme Court." In *Williams v. Taylor*, Justice Stevens, writing for a majority of the court, stated that "[t]he threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established *at the time his state-court conviction became final*." *Brown*, 409 F.3d at 533 n.3 (quoting *Williams*, 529 U.S. at 390) (Stevens, J., for the court) (emphasis added)). In a separate opinion in *Williams*, Justice O'Connor, also writing for a majority of the court, stated that the phrase refers "to the holdings, as opposed to the dicta, of this Court's decisions *as of the time of the relevant state-court decision*." *Id.* (quoting *Williams*, 529 U.S. at 412 (O'Connor, J., for the court) (emphasis added)).

For purposes of its decision in *Brown*, the Second Circuit stated that it did not matter which formulation applied, since "[t]he state of the law, as determined by the Supreme Court, did not materially change between the issuance of the state court decisions denying Petitioners' *Apprendi* claims and the date their convictions became final on direct review." *Id.* Rather, all three

of the petitioners' cases were decided and became final between the
time the Supreme Court decided *Apprendi* and the time it issued
subsequent opinions interpreting *Apprendi*. Thus, the Second Circuit
held in *Brown*, the subsequent elucidation of *Apprendi*'s principles
in such cases as *Blakely* and *Booker* were not relevant in judging
the reasonableness of the state courts' interpretation of *Apprendi*.
*Id.* at 533-34. The applicable universe of clearly established
Federal law therefore was limited to *Apprendi* and the cases that
preceded it. *Id.* at 534 n. 3.

Turning now to Johnson's case, the Court notes that *Apprendi*
was not decided until June 26, 2000, about one year and four months
*after* Johnson's state court conviction became final on February 22,
1999. Thus, "the clearly established Federal law as determined by
the Supreme Court," which this Court must apply to Johnson's claim,
could not include *Apprendi*, regardless of whether Justice Stevens's
or Justice O'Connor's formulation is used for determining the
relevant time period. *See id.* The clearly established Federal law
against which Johnson's sentencing claim must be judged is *Walton
v. Arizona*, 497 U.S. 639 (1990). In *Walton*, the Supreme Court
rejected petitioner's argument is that "every finding of fact
underlying the sentencing decision must be made by a jury, not by
a judge," and that Arizona statutory scheme would be constitutional
"only if a jury decides what aggravating and mitigating
circumstances are present in a given case and the trial judge then
imposes sentence based on those findings." *Id.* at 647. The Supreme

Court determined that Arizona's sentencing scheme was compatible with the Sixth Amendment because the additional facts found by the judge qualified as "sentencing considerations," not as "element[s] of the offense of capital murder." *Id.* at 649.[1]

New York Penal Law 70.10(1)(a) defines a persistent violent felony offender as a "[p]erson who stands convicted of a felony after having previously been convicted of two or more felonies." Under the statute, such a person may receive an enhanced sentence provided that the sentencing court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." N.Y. Crim. Proc. Law § 70.10(2). Viewed against *Walton*, Johnson's adjudication as a persistent felony offender under New York's statutory scheme was not unconstitutional:  The second determination that the sentencing court must make regarding the

---

[1] Ten years later, however, the Supreme Court decided *Apprendi v. New Jersey*, which held  that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; *see also id.* at 483 ("[T]he Sixth Amendment does not permit a defendant to be "expose[d] . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone."). This prohibition applied, *Apprendi* determined, even if the state characterizes the additional findings made by the judge as "sentencing factor[s]." *Id.* at 492. It was not until *Ring* was decided in 2002 that the Supreme Court explicitly acknowledged the tension between *Walton* and *Apprendi*. In *Ring*, the Supreme Court found that *Apprendi*'s reasoning was "irreconcilable" with *Walton*'s holding in that regard, and therefore overruled *Walton* in part.

defendant's character clearly is not an "element of the offense" and reasonably could be construed as a "sentencing consideration."

Finally, decisions by several district courts in this Circuit effectively have held that there is nothing in *Ring*'s holding or the Second Circuit's *Brown v. Greiner* decision to suggest that the Second Circuit's reasoning in *Brown v. Greiner* would have been different were it to evaluate New York's persistent felony offender statute under *Ring*. *See Witherspoon v. Woods*, No. 04-CV-5528, 2006 WL 721510, *5 (E.D.N.Y. Mar. 6, 2006) (holding that state court's sentencing of petitioner pursuant to New York's persistent felony offender statute was contrary to, or an unreasonable application of, *Ring v. Arizona*, *supra*) (citing *Brown v. Miller*, No. 04 Civ. 9804(LBS), 2005 WL 2173761, at *1 (S.D.N.Y. Sept. 7, 2005); *Alston v. Woods*, No. 04CIV8017 WHP/GWG, 2005 WL 3312818, *5 (S.D.N.Y. Dec. 8, 2005). The district court in *Witherspoon* observed that the basis for the Second Circuit's holding in *Brown*—that it was not unreasonable for the New York Court of Appeals to conclude that the determination regarding the defendant's criminal history and character under New York's persistent felony offender statute is "something quite different from the fact-finding addressed in *Apprendi* and its predecessors"– would apply with equal force when examined under *Ring*. *Witherspoon v. Woods*, 2006 WL 721510, at *7. The Court need not decide this issue today since Johnson's claim, when judged against the Supreme Court's pre-*Apprendi* and pre-*Ring* case law, as it must be, lacks merit.

-24-

## CONCLUSION

For the reasons stated above, Lawrence Johnson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Johnson has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253.

ALL OF THE ABOVE IS SO ORDERED

S/Michael A. Telesca

_____
     Michael A. Telesca
United States District Judge

DATED:     May 1, 2006
           Rochester, New York.